UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO **00 - 6 1 1 7** CR-MORENO

18 USC 371
18 USC 1010
18 USC 1014
18 USC 1341
18 USC 1343
18 USC 1344
18 USC 1956
18 USC 2

MAGISTRATE JUDGE
DUBÉ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MARK ROSEMAN,
MIRIAM "MIMI" LAWRENCE, and
LEO BROVILLETTE,

        Defendants.



FILED by _____ D.C.

MAY 1 1 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## INDICTMENT

The Grand Jury charges that:

## COUNT I

### CONSPIRACY TO COMMIT BANK FRAUD, HUD FRAUD
### MAIL FRAUD, AND WIRE FRAUD

1.    From in or about 1993, and continuing until in or about November 1996, the exact

dates being unknown to the grand jury, in Broward County, in the Southern District of Florida,

and elsewhere, the defendants,

MARK ROSEMAN,
MIRIAM "MIMI" LAWRENCE, and

1

LEO BROVILLETTE

did knowingly and willfully combine, conspire, confederate, and agree with each other and with persons known and unknown to commit the following offenses against the United States:

    (a)    bank fraud, in violation of Title 18, United States Code, Section 1344;

    (b)    defrauding the Department of Housing and Urban Development ("HUD"), in violation of 18 United States Code, Section 1010;

    (c)    filing false loan applications with financial institutions, in violation of Title 18 United States Code, Section 1014;

    (d)    mail fraud, in violation of Title 18, United States Code, Section 1341; and

    (e)    wire fraud, in violation of Title 18, United States Code, Section 1343.

## BACKGROUND

At all times material to this indictment:

2.    SunBank/South Florida, N.A., (now known as SunTrust Bank), Barnett Bank (now known as Bank of America), and Savings of America (now known as Washington Mutual) (hereinafter the "the Banks") are nationally chartered banks whose deposits are insured by the Federal Deposit Insurance Corporation. World Savings and Loan is a nationally chartered savings and loan association whose deposits are insured by the Federal Deposit Insurance Corporation.

3.    First Bankers Mortgage Services, Mortgage Dynamics, National Mortgage, Bennett Financial, Preferred Funding, CFI Mortgage Corporation, First Choice Lenders, Sunshine Financial, and Advantage Financial are mortgage brokers (hereafter referred to as the "Mortgage Brokers"). The Mortgage Brokers are in the business of finding lenders for persons who need a loan to purchase real estate. During the course of funding a loan for the buyer, the Mortgage Brokers would send

2

documents and other items to the lender and receive documents and other items from the lender, including funds for closing, by facsimile, wire transfer, and by commercial interstate carrier.

4.      The Department of Housing and Urban Development (HUD) is an agency of the United States government whose duties include guaranteeing loans to low income home buyers in order to enable them to buy homes, and selling foreclosure properties to individuals who intend to live in the property as an owner-occupant.

5.      Defendant ROSEMAN would purchase and sell real estate, in the manner more fully described below, both individually and through his corporation, Mark Roseman, Inc.

6.      Defendant LAWRENCE was a tax preparer and a real estate broker.

7.      Defendant BROVILLETTE owned a company called Mr. B's Construction, which was in the home improvement business.

## OBJECT OF THE CONSPIRACY

8.      It was the object of the conspiracy for the defendants and their coconspirators to unlawfully profit through the sale of real property by submitting and causing to be submitted false information and false documentation to the Banks, the Mortgage Brokers, and HUD in order to purchase low income property and to induce the Banks and Mortgage Brokers to make loans totaling in excess of $15,000,000 to in excess of 150 people who could not otherwise qualify for a loan.

## MANNER AND MEANS OF THE CONSPIRACY

9.      It was part of the conspiracy that defendant ROSEMAN and his coconspirators would and did obtain and finance the purchase of residential real estate, which real estate included purchases of foreclosures from HUD.

3

10.    It was further part of the conspiracy that defendant ROSEMAN, defendant LAWRENCE, and defendant BROVILLETTE solicited or caused to be solicited "straw buyers" to purchase HUD foreclosures, because for the first twenty-one (21) days after certain HUD homes were offered on the market the homes were only offered to owner-occupants, that is, persons who agreed to live in the property as their primary residence.

11.    It was further part of the conspiracy that defendant ROSEMAN and his coconspirators would and did pay or cause to be paid, generally from $200 to $500, in order for the "straw buyers" to pose as the purchaser of the HUD home.

12.    It was further part of the conspiracy that defendant ROSEMAN and his coconspirators would and did conspire with defendant LAWRENCE and other real estate brokers to submit bids to HUD on their behalf claiming that the "straw buyers" would be the owner-occupants of the home.

13.    It was further part of the conspiracy that immediately after the real estate closing wherein the "straw buyers" had purchased the HUD home and after the closing agent for HUD had left, defendant ROSEMAN and his coconspirators would and did cause the "straw buyers" to sign a quit claim deed transferring the HUD home to defendant ROSEMAN, or one of his coconspirators, or one of their corporations.

14.    It was further part of the conspiracy that, even before the closing on the purchase of the HUD home by the "straw buyers," defendant ROSEMAN and his coconspirators, through their corporations, would and did execute contracts selling the property to third parties.

15.    It was further part of the conspiracy that, after the homes were purchased by defendant ROSEMAN and his coconspirators through HUD, they would spend some money

4

improving the homes, and then sell the homes for approximately double the price to unsophisticated buyers.

16    It was further part of the conspiracy that the buyers would not have sufficient income or assets or too many liabilities to qualify for a loan and to pay the down payment and closing costs to purchase the property.

17.   It was further part of the conspiracy that defendant ROSEMAN, defendant LAWRENCE, and defendant BROVILLETTE and their coconspirators would and did complete or caused to be completed loan applications for each of the buyers at one of the Banks or Mortgage Brokers, which loan applications contained false information.

18.   It was further part of the conspiracy that defendant ROSEMAN, defendant LAWRENCE, and defendant BROVILLETTE would and did submit or caused to be submitted with the loan application to the Banks and Mortgage Brokers false documents in order to qualify the buyers for their loan.

19.   It was further part of the conspiracy that if the income of a buyer was insufficient to qualify for a loan, defendant ROSEMAN, defendant LAWRENCE, and defendant BROVILLETTE would and did prepare or caused to be prepared false W-2's and pay stubs which were then submitted to the Banks and Mortgage Brokers on behalf of the buyer.

20.   It was further part of the conspiracy that defendant ROSEMAN would create or caused to be created phony paychecks which purported to be issued by the employer for the buyer and which were then submitted to the Banks and Mortgage Brokers on behalf of the buyer.

21.   It was further part of the conspiracy that defendant ROSEMAN would deposit or caused to be deposited into the bank account of the buyer, cash or checks in the amount of the phony

5

paychecks issued and provide bank statements showing those deposits to the Banks and Mortgage Brokers in order to make the Banks and Mortgage Brokers believe that the buyer was earning the income set forth in the phony paychecks.

22.    It was further part of the conspiracy that, if the income of a buyer was insufficient to qualify for a loan, defendant ROSEMAN and his coconspirators would have defendant LAWRENCE and other tax preparers falsify Form 1040's overstating the annual income of the buyer, which were submitted to the Banks and Mortgage Brokers on behalf of the buyer.

23.    It was further part of the conspiracy that, if the assets of a buyer were insufficient to reflect the ability to make a down payment on a loan, then defendant LAWRENCE, defendant BROVILLETTE, and their coconspirators would and did create or caused to be created a "gift letter," which falsely represented that the down payment had been gifted to the buyer by a relative, and would then submit the fraudulent "gift letter" to the Banks and Mortgage Brokers on behalf of the buyer.

24.    It was further part of the conspiracy that the defendants' coconspirators would and did create or cause to be created bank statements or alter existing bank statements which would show balances for the buyer or a person gifting the down payment to the buyer, either greatly over-representing the true balance in the account or a substantial balance in a bank where the person had no account, and would then submit the fraudulent bank statements to the Banks and Mortgage Brokers.

25.    It was further part of the conspiracy that defendant ROSEMAN and his coconspirators would and did issue checks to the buyer, which checks were cashed and deposited into the buyer's

6

bank account, in order to make it appear to the Banks and Mortgage Brokers as if the buyer had sufficient funds to pay the down payment and the closing costs on the purchase of the house.

26.    It was further part of the conspiracy that defendant ROSEMAN and his coconspirators would and did negotiate a down payment from the buyer that was less than the Banks and the Mortgage Brokers would accept, and would then deceive the Banks and Mortgage Brokers by having the buyer issue them checks in the amount of the required down payment which was submitted to the Banks and Mortgage Brokers and then they would reimburse the buyer for those checks in full or in part.

27.    It was further part of the conspiracy that, if the buyer had little or no credit history, defendant ROSEMAN, defendant LAWRENCE, and defendant BROVILLETTE and their coconspirators would and did create or caused to be created credit reference letters from Bell South, Florida Power and Light and other businesses falsely stating the buyer had an excellent credit history, and would then submit or caused to be submitted the credit reference letters to the Banks and Mortgage Brokers on behalf of the buyer.

28.    It was further part of the conspiracy that defendant ROSEMAN and defendant LAWRENCE and their coconspirators would and did submit or caused to be submitted to the Banks and Mortgage Brokers fraudulent letters created to fill in the gaps in employment and other questions the Banks and Mortgage Brokers may have on the loan application.

29.    It was further part of the conspiracy that, in order to prevent the Banks and Mortgage Brokers from uncovering the false information, such as the false Form W-2's, false bank statements, and false rental information, defendant ROSEMAN, defendant LAWRENCE, defendant BROVILLETTE and their coconspirators would and did include names, telephone numbers and

7

addresses in the loan applications submitted to the Banks and Mortgage Brokers of persons who would, at the direction of the defendants and their coconspirators, provide false verifications as to the employment, bank deposits or rental information of the buyers to the Banks and Mortgage Brokers.

30.    It was further part of the conspiracy that the defendants' coconspirators would and did conspire with loan officers and loan processors in order that the written verification of employment forms and verification of deposit forms would be given directly to the defendants or their coconspirators instead of being mailed directly to the employers or the banks, which forms would then be falsely completed and sent back to the Banks and Mortgage Brokers.

31.    It was further part of the conspiracy that defendant ROSEMAN and his coconspirators would and did falsely represent or caused to be represented to the Banks and the Mortgage Brokers that the cash to close came from the buyer, when as they well knew, the cash to close was paid or caused to be paid by the defendants.

32.    It was further part of the conspiracy that defendant ROSEMAN and defendant BROVILLETTE and their coconspirators would and did pay or cause to be paid up to $5,000 after the closing to some of the buyers for purchasing the properties.

## OVERT ACTS

33.    In furtherance of the conspiracy and to effect the objects thereof, at least one of the following overt acts, among others, was carried out by at least one co-conspirator in the Southern District of Florida, and elsewhere:

A    On or about June 28, 1993, defendant ROSEMAN issued a check for $275.00 to SunBank, which was an application fee for a loan for Tracye Rozier.

8

B. On or about July 1, 1993, defendant ROSEMAN caused a loan application to be submitted to SunBank. The loan application falsely reflected that Tracy Rozier was employed as a manager for Ivory's and that Efrain Darshan was her landlord.

C. On or about July 15, 1993, defendant ROSEMAN caused a verification of employment to be submitted to SunBank falsely stating that Tracye Rozier earned income from M S Stores of $25,018 for 1992 and $23,460 for 1991.

D. In or about July 1993, defendant ROSEMAN caused another person to prepare a false letter purporting to be from FP&L stating that Tracye Rozier had good credit with FP&L.

E. In or about July 1993, defendant ROSEMAN submitted to SunBank, in support of a loan for Tracye Rozier, payroll checks falsely stating that she earned $426.53 from M S Stores.

F. On or about June 28, 1993, defendant ROSEMAN gave Tracye Rozier $426.53 cash, which was then deposited into her account at SunBank to make it appear that she received a payroll check for that amount.

G. On or about July 20, 1993, defendant ROSEMAN gave Tracye Rozier $426.53 cash, which was then deposited into her account at SunBank to make it appear that she received a payroll check for that amount.

H. On or about July 10, 1993, defendant ROSEMAN caused a verification of rental form purporting to be executed by Efraim Darshan falsely stating that he had been the landlord for Tracye Rozier to be submitted to SunBank.

9

I.    On or about June 28, 1993, defendant ROSEMAN issued a check through his corporation to Tracye Rozier in the amount of $500.

J.    On or about June 28, 1993, defendant ROSEMAN received a check for $1000 from Tracye Rozier.

K.    On or about July 15, 1993, defendant ROSEMAN issued a check through his corporation to Tracye Rozier in the amount of $1000

L.    On or about July 15, 1993, defendant ROSEMAN received a check for $1000 from Tracye Rozier.

M.    In or about July 1993, defendant ROSEMAN caused a person other than Tracye Rozier's husband to stand in for her husband at closing.

N.    On or about January 26, 1994, defendant ROSEMAN caused a loan application to be submitted to SunBank  The loan application falsely reflected that Jimmy Murray was employed by Carlos DelValle at Quality Parts.

O.    In or about January 1994 defendant ROSEMAN caused fraudulent W-2 forms for Jimmy Murray to be submitted to SunBank.

P.    In or about February 1994, defendant LAWRENCE caused a verification of employment form to be submitted to SunBank falsely stating that Jimmy Murray earned income from Quality Parts of $24,433.72 for 1993 and $23,884.38 for 1992.

Q.    In or about January 1994, defendant ROSEMAN and defendant LAWRENCE caused a letter to be submitted to SunBank which falsely stated that Jimmy Murray received a bonus check from Quality Parts.

10

R   In or about January 1994, defendant ROSEMAN caused another person to prepare a false letter purporting to be from FP&L stating that Jimmy Murray had good credit with FP&L.

S.   In or about February 1994, defendant LAWRENCE caused to be submitted in support of a loan for Jimmy Murray from SunBank payroll checks, each check falsely stating that Jimmy Murray earned $360.81

T   In or about January 1994, defendant ROSEMAN caused to be submitted to SunBank a verification of rental form falsely stating that Lynn D'Amico is Jimmy Murray's landlord at 4391 NW 19th Street, Lauderhill, Florida.

U   On or about January 16, 1994, defendant ROSEMAN issued a check through his corporation to Jimmy Murray in the amount of $500.

V   On or about January 14, 1994, defendant ROSEMAN received a check for $1000 from Jimmy Murray.

W.   On or about February 13, 1994, defendant ROSEMAN issued a check through his corporation to Jimmy Murray in the amount of $1000.

X.   On or about February 14, 1994, defendant ROSEMAN received a check for $1000 from Jimmy Murray.

Y.   On or about February 28, 1994, defendant ROSEMAN, through his corporation, issued a check to Mimi Lawrence and Associates for $400 with respect to the Jimmy Murray property.

11

Z.   On or about June 1, 1994, defendant ROSEMAN caused a loan application to be submitted to SunBank. The loan application falsely reflected that Everett Bennett was employed by Steel Tires.

AA.   In or about June 1994 defendant ROSEMAN caused fraudulent Form 1040's for 1992 and 1993 for Everett Bennett to be submitted to SunBank.

BB.   In or about June 1994, defendant ROSEMAN caused a verification of employment form to be submitted to SunBank falsely stating that Everett Bennett earned income from Steel Tires of $25,720 for 1993 and $24,460 for 1992.

CC.   In or about June 1994, defendant ROSEMAN caused to be submitted in support of a loan for Everett Bennett from SunBank a payroll check dated June 17, 1994, falsely stating that Everett Bennett earned $813.50.

DD.   On or about June 20, 1994, defendant ROSEMAN issued a check through his corporation to Everett Bennett in the amount of $813.50.

EE.   On or about January 10, 1994, defendant ROSEMAN caused a loan application to be submitted to SunBank. The loan application falsely reflected that Willie Johson's landlord was defendant BROVILLETTE.

FF.   On or about January 20, 1994, defendant BROVILLETTE caused to be submitted to SunBank a verification of rental form falsely stating that defendant BROVILLETTE had been the landlord for Willie Johnson.

GG.   On or about February 18, 1994, defendant ROSEMAN caused a loan application to be submitted to SunBank. The loan application falsely reflected that the landlord for Max Vassor and Marlene Nicholas was Billy Dobbs.

12

HH.   On or about March 2, 1994, defendant ROSEMAN and defendant LAWRENCE caused a verification of rental form falsely stating that Billy Dobbs had been the landlord for Max Vassor and Marlene Nicholas to be submitted to SunBank.

II.   On or about March 10, 1994, defendant ROSEMAN caused a letter that falsely stated the reason for the gap in the employment of Marlene Nicholas to be submitted to SunBank.

JJ.   On or about February 18, 1994, defendant ROSEMAN issued a check through his corporation to Max Vassor in the amount of $1000.

KK.   On or about February 18, 1994, defendant ROSEMAN received a check for $1500 from Max Vassor.

LL.   On or about March 22, 1994, defendant ROSEMAN, through his corporation, issued a check to Mimi Lawrence and Associates for $50 with respect to the Max Vassor property.

MM.   On or about March 4, 1994, a coconspirator caused a loan application to be submitted to SunBank. The loan application falsely reflected that Edgar Felix was employed by Southern Cleaning Services.

NN.   In or about March 1994 defendant LAWRENCE caused fraudulent Form 1040's for 1992 and 1993 for Edgar Felix to be submitted to SunBank.

OO.   On or about March 17, 1994, a coconspirator caused a loan application to be submitted to Sunshine Financial. The loan application falsely reflected that Edgar Felix was employed by Southern Cleaning Services.

13

PP.    In or about March 1994 defendant LAWRENCE caused fraudulent Form 1040's for 1992 and 1993 for Edgar Felix to be submitted to Sunshine Financial.

QQ.    On or about May 24, 1994, defendant ROSEMAN submitted a letter to Sunshine Financial that falsely stated that his corporation is holding a $1000 deposit with respect to 3709 SW 13th Ct., Fort Lauderdale, Florida.

RR    On or about April 28, 1994, defendant BROVILLETTE and one of the coconspirators caused a false verification of employment for Edgar Felix to be submitted to Sunshine Financial.

SS.    On or about April 13, 1994, a coconspirator caused a loan application to be submitted to Savings of America. The loan application falsely reflected that: Edgar Felix was employed by Southern Cleaning Services; defendant LAWRENCE was Edgar Felix' landlord; and that defendant ROSEMAN's corporation was holding $1000 for the purchase of 204 N.W. 9th St., Fort Lauderdale, Florida.

TT.    On or about May 31, 1994, defendant BROVILLETTE caused to be issued a check in the amount of $4,725 to Edgar Felix.

UU.    On or about June 13, 1994, defendant BROVILLETTE caused to be issued a check in the amount of $5,000 to Edgar Felix.

VV.    On or about May 6, 1994, a coconspirator caused a loan application to be submitted to SunBank. The loan application falsely reflected that Jonathan Scott was employed by Scott Electrical Service.

WW.    In or about May 1994, a coconspirator submitted to SunBank fraudulent Form 1040's for 1992 and 1993 for Jonathan Scott

14

XX. In or about May 1994, a coconspirator submitted a check dated May 13, 1994, to SunBank falsely stating that Jonathan Scott earned $464.00 working for CW Fischer.

YY. On or about May 13, 1994, defendant ROSEMAN issued a check through his corporation to Jonathan Scott in the amount of $464.00.

ZZ. On or about May 13, 1994, defendant ROSEMAN issued a check through his corporation to Jonathan Scott in the amount of $542.00.

AAA. On or about May 13, 1994, defendant ROSEMAN received a check for $1000 from Jonathan Scott.

BBB. On or about May 9, 1994, defendant ROSEMAN, through his corporation, issued a check to defendant LAWRENCE for $60 with respect to the Jonathan Scott property.

CCC. On or about June 19, 1994, defendant LAWRENCE submitted a loan application to SunBank. The loan application falsely reflected that Tomas Marquez had been employed for two years by Mr. B's Construction.

DDD. On or about January 12, 1995, defendant ROSEMAN caused a bid to be submitted to HUD to purchase the property at 531 Alabama Ave., Fort Lauderdale, Florida as an owner-occupant.

EEE. On or about March 9, 1995, a coconspirator paid a person $500 for acting as a straw purchaser with respect to 531 Alabama Ave.

FFF. On or about April 25, 1995, a coconspirator caused a loan application to be submitted to First Bankers Mortgage Services. The loan application falsely reflected that Belinda Scott was employed by Mr. B's Construction.

15

GGG.    In or about May 1995, defendant BROVILLETTE caused a verification of employment form to be submitted to First Bankers Mortgage Services falsely stating that Belinda Scott earned income from Mr. B's Construction of $21,762 for 1994 and $21,073 for 1993.

HHH.    On or about May 1995, a coconspirator caused a loan application to be submitted to Barnett Bank. The loan application falsely reflected that Belinda Scott was employed by Mr. B's Construction.

III.    On or about June 8, 1995, defendant BROVILLETTE issued a check for $5,000 to Jonathan Scott for purchasing a property.

JJJ.    On or about April 13, 1995, defendant ROSEMAN caused a contract to be submitted in the name of Monica Secaira to purchase the property at 1612 NW 6th Ave., Fort Lauderdale, Florida as an owner-occupant from HUD.

KKK.    On or about June 14, 1995, a coconspirator caused a quit claim deed to be executed transferring the property from Monica Secaira to Royaline Realty.

LLL.    On or about June 23, 1995, defendant ROSEMAN, through his corporation, paid an application fee of $450 to Mortgage Dynamics for Belinda Scott to obtain a loan to purchase 1612 NW 6th Ave., Fort Lauderdale, Florida.

MMM.    On or about June 24, 1995, a coconspirator caused a loan application to be submitted to Mortgage Dynamics. The loan application falsely reflected that Belinda Scott was employed by VC Electronics, 1590 NE 28th Street, Pompano Beach, Florida.

NNN.    On or about July 3, 1995, defendant ROSEMAN caused HUD to sell the house at 1612 NW 6th Ave., Fort Lauderdale, Florida, to Monica Secaira

16

OOO.    On or about August 17, 1995, defendant ROSEMAN received a check for $65,000 upon closing on 1612 NW 6th Ave.

PPP.    On or about February 11, 1995, a coconspirator caused a loan application to be submitted to First Bankers Mortgage Services. Submitted on or about the time of the loan application were Form 1040's which falsely reflected that Eddie Weaver had business income on Schedule C of $34,154 for 1994 and $33,191 for 1993

QQQ.    On or about February 11, 1995, defendant LAWRENCE received $75.00 from Granite Properties.

RRR.    On or about January 27, 1995, defendant ROSEMAN caused a contract to be submitted to HUD in the name of William Cooper to purchase the property at 1525 NE 5th Ave., Fort Lauderdale, Florida as an owner-occupant.

SSS.    On or about March 11, 1995, a coconspirator caused a loan application to be submitted to First Bankers Mortgage Services. Submitted on or about the time of the loan application were Form 1040's which falsely reflected that Ramon Elgue had adjusted gross income of $29,934 for 1994 and $27,762 for 1993.

TTT.    On or about April 24, 1995, defendant LAWRENCE was paid $100.00 from Granite Properties.

UUU.    On or about April 24, 1995, defendant ROSEMAN, through his corporation, paid an application fee of $330 to First Bankers Mortgage Services for Jerome Walker to obtain a loan to purchase 424 SW 24th Ave., Fort Lauderdale, Florida.

VVV.    On or about April 24, 1995, a coconspirator caused a loan application to be submitted to First Bankers Mortgage Services. The loan application falsely reflected that

17

Jerome Walker was employed during 1993 and 1994 at P.D.E. Security, and included fraudulent Form W-2's reflecting that Jerome Walker earned income from P.D.E. Security for 1994 of $13,120 and for 1993 of $12,840.

WWW. On or about May 10, 1995, a coconspirator caused a loan application to be submitted to First Bankers Mortgage Services. Submitted on or about the time of the loan application were form W-2's which falsely reflected that Fred Lambert earned $22,374 for 1994 and $21,228 for 1993 from Sun Belt Janitorial.

XXX.    On or about May 30, 1995, defendant ROSEMAN, through his corporation, paid an application fee of $475 to Mortgage Dynamics for Fred Lambert to obtain a loan to purchase 841 NW 19th Ave., Fort Lauderdale, Florida.

YYY.    On or about June 1, 1995, a coconspirator caused a loan application to be submitted to Mortgage Dynamics. Submitted on or about the time of the loan application were Form W-2's which falsely reflected that Fred Lambert earned $22,374 for 1994 and $21,228 for 1993 from Sun Belt Janitorial.

ZZZ.    On or about July 3, 1995, defendant ROSEMAN, through his corporation, paid an appraisal fee of $347 to Barnett Bank for Fred Lambert to obtain a loan to purchase 841 NW 19th Ave., Fort Lauderdale, Florida.

AAAA. On or about July 3, 1995, a coconspirator caused a loan application to be submitted to Barnett Bank. Submitted on or about the time of the loan application were form W-2's which falsely reflected that Fred Lambert earned $22,374 for 1994 and $21,228 for 1993 from Sun Belt Janitorial.

18

BBBB.  On or about July 21, 1995, defendant ROSEMAN issued a check in the amount of $500 with respect to 841 NW 19th Ave.

CCCC.  On or about August 18, 1995, a coconspirator caused a loan application to be submitted to Barnett Bank.  The loan application falsely reflected that Kawanza Jackson had approximately $4,300 in an account at Citizens Federal Bank.

DDDD.  On or about September 12, 1995, a coconspirator caused a loan application to be submitted to Mortgage Dynamics.  The loan application falsely reflected that Kawanza Jackson had approximately $6,000 in an account at NationsBank, and failed to reflect the mortgage obtained in August 1995 from Barnett Bank.

EEEE.  On or about May 2, 1995, a coconspirator caused a loan application to be submitted to First  Bankers Mortgage Services. Submitted on or about the time of the loan application was a tax return that falsely reflected that Lathon Miller had adjusted gross income of $30,668 for 1994.

FFFF.      On or about April 24, 1995 defendant LAWRENCE received a check for $100.

GGGG.  On or about June 6, 1995, a coconspirator caused a loan application to be submitted to Mortgage Dynamics. Submitted on or about the time of the loan application was a tax return that falsely reflected that Lathon Miller had adjusted gross income of $30,668 for 1994.

HHHH.  On or about August 18, 1995, defendant BROVILLETTE caused a loan application to be submitted to  Mortgage Dynamics  The loan application falsely reflected that

19

Luis Orozco had approximately $11,000 in an account at First Union Bank and that Sheila Garcia was the landlord for Louis Orozco.

IIII.    On or about August 23, 1995, defendant LAWRENCE submitted a loan application to First Choice Funding. The loan application falsely stated that Michael Grabowski had been a supervisor for Mr. B's Construction for three years.

JJJJ.    In or about October 1995 defendant BROVILLETTE caused a fraudulent verification of employment to be sent to First Choice Funding for Michael Grabowski.

KKKK.    On or about October 27, 1995, a coconspirator caused a loan application to be submitted to Savings of America. The loan application falsely reflected that Devon Fullerton had approximately $11,800 in an account at First Nationwide Bank.

LLLL.    On or about November 21, 1995, defendant ROSEMAN submitted a check for $125 to Mortgage Dynamics for a loan for Devon Fullerton.

MMMM    On or about November 27, 1995, a coconspirator caused a loan application to be submitted to Mortgage Dynamics. The loan application falsely reflected that Devon Fullerton had approximately $12,000 in an account at First Nationwide Bank.

NNNN    On or about December 11, 1995, defendant ROSEMAN and defendant LAWRENCE caused a bid to be submitted to HUD to purchase 1409 NE 3rd Avenue, Fort Lauderdale, Florida on behalf of Billy Dobbs as an owner-occupant.

OOOO.    On or about March 8, 1996, a coconspirator caused a loan application to be submitted to CFI Mortgage Corporation. The loan application falsely reflected that Ertha Dorsin had approximately $9,000 in an account at First Union Bank.

PPPP.    On or about June 27, 1996, a coconspirator caused the closing costs to be paid on a loan for Jackson Lucius and Suzette Fleurant with respect to their purchase of 5901 NE 2nd Ave., Fort Lauderdale, Florida.

QQQQ.    On or about July 25, 1996, defendant ROSEMAN issued a check in the amount of $500 with respect to 5901 NE 2nd Ave., Fort Lauderdale, Florida.

RRRR.    On or about August 1, 1996, defendant ROSEMAN issued a check in the amount of $280 with respect to 5901 NE 2nd Ave., Fort Lauderdale, Florida.

SSSS.    On or about June 27, 1996, a coconspirator caused a loan application to be submitted to Advantage Financial. The loan application falsely reflected that Johnny Donfred had $100,000 in his account at Savings of America.

TTTT.    Counts II through XXIX are incorporated by reference as if fully set forth herein as individual overt acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

## COUNTS II THROUGH XI-LOAN APPLICATION FRAUD

34.    The allegations contained in paragraphs two through thirty-three of Count I of this indictment are realleged and incorporated by reference as though fully set forth herein.

35.    On or about the dates set forth below, at Broward County, in the Southern District of Florida, defendant,

### MARK ROSEMAN,

did knowingly and willfully make materially false statements for the purpose of influencing the actions of the financial institutions set forth below, whose deposits were then insured by the Federal Deposit

21

Insurance Corporation, and, in order to assist another person in obtaining a loan, defendant

ROSEMAN made and caused to be made the following false statements to said financial institutions,

which he then and there well knew, in truth and in fact, to be false:

| COUNT | DATE | BANK | ACT |
|---|---|---|---|
| II | 07/93 | SunBank | Caused a loan application to be submitted that falsely reflected that Tracy Rozier was employed as a manager for Ivory's and that Efrain Darshan was her landlord and caused another person to prepare a false letter purporting to be from FP&L stating that Tracye Rozier had good credit with FP&L. |
| III | 01/94 | SunBank | Caused a loan application to be submitted that falsely reflected that Jimmy Murray was employed by Carlos DelValle at Quality Parts and caused another person to prepare a false letter purporting to be from FP&L stating that Jimmy Murray had good credit with FP&L. |
| IV | 06/94 | SunBank | Caused a loan application to be submitted that falsely reflected that Everett Bennett was employed by Steel Tires and caused a payroll check dated June 17, 1994, to be submitted that falsely stated that Everett Bennett earned $813 50 from Steel Tires. |
| V | 1/94 | SunBank | Caused a loan application to be submitted that falsely reflected that Willie Johson's landlord was defendant BROVILLETTE. |
| VI | 1/94 | SunBank | Caused a loan application to be submitted that falsely reflected that Billy Dobbs had been the landlord for Max Vassor and Marlene Nicholas and caused to be submitted a letter that falsely stated the reason for the gap in the employment of Marlene Nicholas. |
| VII | 04/94 | Savings of America | Caused a loan application to be submitted for Edgar Felix that falsely reflected that defendant ROSEMAN's corporation was holding $1000 with respect to the purchase of 204 N.W. 9th St., Fort Lauderdale, Florida. |

| VIII | 4/94 | SunBank | Caused to be submitted in support of a loan application for Jonathan Scott a check dated May 13, 1994, falsely stating that Jonathan Scott earned $464.00 working for CW Fischer. |
|------|------|---------|---------------------------------------------------------------|
| IX | 5/95 | Barnett Bank | Caused a loan application to be submitted that falsely reflected that Belinda Scott was employed by Mr. B's Construction. |
| X | 6/95 | Barnett Bank | Caused a loan application to be submitted that falsely reflected that Fred Lambert earned $22,374 for 1994 and $21,228 for 1993 from Sun Belt Janitorial. |
| XI | 02/96 | World Savings and Loan | Caused a loan application to be submitted that falsely reflected the sales price of 1333 Madison, Hollywood, Florida to be $390,000. |

All in violation of Title 18, United States Code, Sections 1014 and 2.

### COUNTS XII THROUGH XV-LOAN APPLICATION FRAUD

36.    The allegations contained in paragraphs two through thirty-three of this indictment are realleged and incorporated by reference as though fully set forth herein.

37.    On or about the dates set forth below, at Broward County, in the Southern District of Florida, defendant,

MIRIAM "MIMI" LAWRENCE

did knowingly and willfully make materially false statements for the purpose of influencing the actions of the financial institutions set forth below, whose deposits were then insured by the Federal Deposit Insurance Corporation, and, in order to assist another person in obtaining a loan, defendant

23

LAWRENCE made and caused to be made the following false statements to said financial institutions,

which she then and there well knew, in truth and in fact, to be false:

| COUNT | DATE | BANK | ACT |
|-------|------|------|-----|
| XII | 01/94 | SunBank | Caused a loan application to be submitted that falsely reflected that Jimmy Murray was employed by Carlos DelValle at Quality Parts, caused paychecks and a fraudulent verification of employment to be submitted that falsely reflected that Jimmy Murray earned wages from Quality Parts. |
| XIII | 01/94 | SunBank | Caused a loan application to be submitted that falsely reflected that Billy Dobbs had been the landlord for Max Vassor and Marlene Nicholas. |
| XIV | 04/94 | SunBank | Caused fraudulent tax returns to be submitted in support of a loan application for Edgar Felix. |
| XV | 6/94 | SunBank | Caused a loan application to be submitted that falsely reflected that Tomas Marquez had been employed by Mr. B's Construction for two years. |

All in violation of Title 18, United States Code, Sections 1014 and 2

## COUNTS XVI THROUGH XVII-LOAN APPLICATION FRAUD

38    The allegations contained in paragraphs two through thirty-three of this indictment

are realleged and incorporated by reference as though fully set forth herein.

39.    On or about the dates set forth below, at Broward County, in the Southern District

of Florida, defendant,

### LEO BROVILLETTE

did knowingly and willfully make materially false statements for the purpose of influencing the actions

of the financial institutions set forth below, whose deposits were then insured by the Federal Deposit

24

Insurance Corporation, and, in order to assist another person in obtaining a loan, defendant BROVILLETTE made and caused to be made the following false statements to said financial institutions, which he then and there well knew, in truth and in fact, to be false:

| COUNT | DATE | BANK | ACT |
|-------|------|------|-----|
| XVI | 01/94 | SunBank | In support of a loan application caused a verification of rent to be submitted that falsely reflected that defendant BROVILLETTE was the landlord for Willie Johnson. |
| XVII | 05/95 | Barnett Bank | In support of a loan application caused the employment of Belinda Scott to be falsely verified stating that she was a dispatcher/ project coordinator for Mr. B's Construction. |

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNTS XVIII THROUGH XXVI-WIRE FRAUD

40.     The allegations contained in paragraphs two through thirty-three of Count I of this indictment are realleged and incorporated by reference as though fully set forth herein.

41.     On or about the dates enumerated as to each count, at Broward County, in the Southern District of Florida, and elsewhere, for the purpose of executing, and in furtherance of the aforesaid scheme and artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, the defendants set forth in each count below, did knowingly and willfully transmit and cause to be transmitted in interstate commerce by means of wire communications certain signals and sounds, as more particularly described below:

25

| COUNT | DATE | DEFENDANTS | WIRE COMMUNICATION |
|---|---|---|---|
| XVIII | 03/03/95 | ROSEMAN and LAWRENCE | A facsimile was sent by First Bankers Mortgage Services to a company in Pennsylvania requesting funding for the loan for Eddie Weaver, which affect a financial institution. |
| XIX | 05/19/95 | ROSEMAN | A facsimile was sent by First Bankers Mortgage Services to a company in California requesting funding for a loan for Jerome Walker. |
| XX | 06/21/95 | ROSEMAN and LAWRENCE | A facsimile was sent to Mortgage Dynamics from Georgia regarding the loan for Lathon Miller. |
| XXI | 08/17/95 | ROSEMAN | A wire transfer was sent from outside the State of Florida to Lighthouse Point & Title for the loan for Belinda Scott |
| XXII | 09/21/95 | ROSEMAN | A facsimile was sent by Mortgage Dynamics to Michigan regarding the loan for Kawanza Jackson. |
| XXIII | 10/24/95 | BROVILLETTE | A facsimile was sent to Mortgage Dynamics from a company in Michigan regarding funding for a loan for Luis Orozco. |
| XXIV | 12/06/95 | ROSEMAN | A facsimile was sent to Mortgage Dynamics from Georgia regarding the loan for Devon Fullerton. |
| XXV | 07/24/96 | ROSEMAN | A facsimile was sent to Lighthouse Point & Title from Massachusetts with closing instructions for the loan for Jackson Lucius and Suzette Fleurant. |
| XXVI | 07/23/96 | ROSEMAN | A facsimile was sent to Advantage Financial from New Jersey regarding the loan for Johnny Donfred. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS XXVII THROUGH XXVIII-MAIL FRAUD

42.    The allegations contained in paragraphs two through thirty-three of Count I of this indictment are realleged and incorporated by reference as though fully set forth herein.

43.    On or about the dates enumerated as to each count, at Broward County, in the Southern District of Florida, and elsewhere, for the purpose of executing, and in furtherance of the aforesaid scheme and artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, the defendants set forth in each count below, did knowingly and willfully send and cause to be sent by private and commercial interstate carrier such matters and things, as more particularly described below.

| COUNT | DATE | DEFENDANTS | MAILING |
|-------|------|------------|---------|
| XXVII | 05/17/96 | ROSEMAN | A cashier's check was sent from Texas by commercial interstate carrier to Lighthouse Point & Title in Broward County with respect to the loan for Luc and Ertha Dorsin. |
| XXVIII | 05/30/96 | LAWRENCE | Loan documents were sent from Broward County to Texas by commercial interstate carrier with respect to a loan for Ricardo Alvarez and Maria Bravo. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT XXIX-MONEY LAUNDERING

44.    The allegations contained in paragraphs two through thirty-three of Count I of this indictment are realleged and incorporated by reference as though fully set forth herein.

45    From in or about 1993, and continuing until in or about November 1996, the exact dates being unknown to the grand jury, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

MARK ROSEMAN,

did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown to the Grand Jury to commit certain offenses against the United States, that is:

46.    With knowledge that the property involved in financial transactions represented the proceeds of some form of unlawful activity, conduct and attempt to conduct financial transactions which affected interstate commerce and which, in fact, involved the proceeds of specified unlawful activities, that is, loan fraud, mail fraud, and wire fraud, with the intent to promote the carrying on of said specified unlawful activities, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

## BACKGROUND

47.    Defendant ROSEMAN utilized the following bank accounts in furtherance of the money laundering conspiracy:

| BANK | ACCT. NO |
|------|----------|
| Great Western Bank | 7178039538 |
| Great Western Bank | 7178054974 |
| NationsBank | 3603493230 |
| NationsBank | 3517394572 |

28

## OBJECT OF THE CONSPIRACY

48.    It was the object of the conspiracy for defendant ROSEMAN and his coconspirators to unlawfully enrich themselves by conducting financial transactions which promoted the carrying on of the loan fraud scheme, such as acquiring and financing new properties to be used in the scheme and making payments to coconspirators and others for activities done in furtherance of the scheme.

## MANNER AND MEANS OF CONSPIRACY

49.    It was part of the conspiracy that defendant ROSEMAN and his coconspirators would and did obtain and finance the purchase of residential real estate.

50.    It was further part of the conspiracy that, after the properties were purchased by defendant ROSEMAN and his coconspirators, they would spend some money improving the homes, and then sell the homes for approximately double the price to unsophisticated buyers.

51.    It was further part of the conspiracy that the buyers would not have sufficient income or assets, or too many liabilities to be able to qualify for a loan and to pay the down payment and closing costs to purchase the property.

52.    It was further part of the conspiracy that defendant ROSEMAN and his coconspirators would and did submit or caused to be submitted loan applications for the buyers at one of the Banks and Mortgage Brokers, which loan applications contained false information and fraudulent documentation.

53.    It was further part of the conspiracy that the Banks and Mortgage Brokers would and did fund or caused to be funded loans based on the false information and fraudulent documentation.

29

54.    It was further part of the conspiracy that defendant ROSEMAN would receive checks at closing from the proceeds of the loans obtained through fraud and deposit those checks in the above listed bank accounts.

55.    It was further part of the conspiracy that defendant ROSEMAN and his coconspirators would use the proceeds of the loans obtained through fraud to acquire and finance new properties to be used in the scheme and to make payments to coconspirators and others for activities done in furtherance of the scheme.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE

56.    The allegations contained in paragraphs two through thirty-three of Count I and the allegations contained in paragraphs forty-seven through fifty-five of Count XXIX of this indictment are realleged and incorporated by reference as though fully set forth herein

57        Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction on Count XXIX, in violation of Title 18, United States Code, Section 1956(h), the defendant,

### MARK ROSEMAN,

shall forfeit to the United States, all property, real and personal, involved in and traceable to, directly and indirectly to the aforementioned offense:

> $5,000,000 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property which was involved in the aforestated offense or is traceable to such property.

30

58      If any of the above-described forfeitable property in paragraph 57 above, as a result of any act or omission by the defendant,

        (1)     Cannot be located upon the exercise of due diligence;

        (2)     Has been transferred, or sold to, or deposited with a third person;

        (3)     Has been placed beyond the jurisdiction of the court;

        (4)     Has been substantially diminished in value;

        (5)     Has been commingled with other property which cannot be subdivided without difficulty,

defendant ROSEMAN shall forfeit to the United States any other property of defendant ROSEMAN, up to the value of the above forfeitable property, pursuant to Title 18, United States Code, Section 982(b).

A TRUE BILL

_Richard M. Sloan_
FOREPERSON

_William Olson_
THOMAS E. SCOTT
UNITED STATES ATTORNEY

JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|

v.

MARK ROSEMAN,
MIRIAM "MIMI" LAWRENCE, and
LEO BROVILETTE

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information**:

**Court Division**: (Select One)

____ Miami   ____ Key West
__X_ FTL   ____ WPB ____ FTP

New Defendant(s)       Yes  ____   No ____
Number of New Defendants        ____
Total number of counts        ____

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:         (Yes or No) ___No___
List language and/or dialect   ___English___

4   This case will take   _12-15_ days for the parties to try.

5.   Please check appropriate category and type of offense listed below:
(Check only one)                          (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | ____ | Petty | ____ |
| II | 6 to 10 days | ____ | Minor | ____ |
| III | 11 to 20 days | __X__ | Misdem. | ____ |
| IV | 21 to 60 days | ____ | Felony | __X__ |
| V | 61 days and over | ____ | | |

6.   Has this case been previously filed in this District Court?  (Yes or No)   _No_
If yes:
Judge: _____          Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter?   (Yes or No) ___No___
If yes:
Magistrate Case No.   _____
Related Miscellaneous numbers:  _99-4657-SNOW; 97-4601-SNOW; and 97-4609-SNOW_
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____       District of _____

Is this a potential death penalty case? (Yes or No) _____NO_____

7.   Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?  _X_ Yes  __ No  If yes, was it pending in the Central Region? _X_ Yes __ No

JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY
Court Bar No. A5500030

*Penalty Sheet(s) attached
N:\udd\hpantale\kaplan\ROSEMAN\INDPKG2.wpd

REV.4/7/99

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name: _____ MARK ROSEMAN _____    No.: _____

Count #I:
Conspiracy to commit bank fraud, defrauding the Department of Housing & Urban Development, filing

false loan applications with financial institutions; mail fraud, wire fraud & money laundering, all in

violation of 18:371 _____

*Max Penalty:    5 years' maximum imprisonment; $250,000 fine _____

Count #II-XI:
Loan application fraud; in violation of 18:1014 _____

_____

*Max Penalty:    Each count 30 years' maximum imprisonment, $1,000,000 fine. _____

Count #XVIII-XXII and XXIV-XXVI:

Wire fraud; in violation of 18:1343 _____

_____

*Max Penalty:    Each count 5 years' maximum imprisonment, $250,000 fine. _____

_____

Count #XXVII:
Mail fraud; in violation of 18:1341 _____

_____

*Max Penalty: 5 years' maximum imprisonment, $250,000 fine _____

Count # XXIX:
Conspiracy to commit money laundering; in violation of 18:1956(h) _____

_____

*Max Penalty:    20 years' maximum imprisonment; $500,000 fine or twice the amount of the property

involved in the transaction. _____


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special
assessments, parole terms or forfeitures that may be applicable.**

REV 12-12-96

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name: _____MIRIAM "MIMI" LAWRENCE_____        No.:_____

Count #1:

Conspiracy to commit bank fraud, defrauding the Department of Housing & Urban Development, filing false

loan applications with financial institutions; mail fraud, wire fraud & money laundering, all in violation of

18:371_____

*Max Penalty:   5 years' maximum imprisonment, $250,000 fine_____

Count #XII-XV

Loan application fraud, in violation of 18:1014_____

*Max Penalty: Each count 30 years' maximum imprisonment; $1,000,000 fine_____

Count #XVIII, XX

Wire fraud; in violation of 18:1343_____

*Max Penalty: 5 years' maximum imprisonment, $250,000 fine_____

Count #XXVIII

Mail fraud; in violation of 18:1341_____

*Max Penalty: 5 years' maximum imprisonment; $250,000 fine_____

Count # :

_____

*Max Penalty:_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

REV 12.12.91

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name _____ LEO BROVILLETTE _____    No. _____

Count #I:
Conspiracy to commit bank fraud, defrauding the Department of Housing & Urban Development, filing

false loan applications with financial institutions; mail fraud, wire fraud & money laundering, all in

violation of 18:371 _____

*Max Penalty    5 years' maximum imprisonment, $250,000 fine _____

Count #XVI-XVII:

Loan application fraud; in violation of 18:1014 _____

_____

*Max Penalty:    Each count 30 years' maximum imprisonment; $1,000,000 fine _____

Count #XXIII:
Wire fraud; in violation of 18.1343 _____

_____

*Max Penalty: 5 years' maximum imprisonment; $250,000 fine _____

Count # :

_____

_____

*Max Penalty: _____

Count # :

_____

_____

*Max Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

FF:  /2/13+9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. _____

IN THE MATTER OF FGJ 98-02  )    DOCKET ENTRY # **00 - 6117**
_____ )    (to be completed by Clerk of Court)

CR - MORENO

SEALED FILING COVER SHEET

MAGISTRATE JUDGE

DUBÉ

Party Filing Matter Under Seal:
    Name:       Jeffrey N. Kaplan
    Address:    500 E. Broward Boulevard, Suite 700, Fort Lauderdale; FL 33394
    Telephone:  (954) 356-7255x3515
    Facsimile:  (954) 356-7336
    E-mail:     Jeffrey.Kaplan@justice.usdoj.gov

Counsel for Party Filing Matter Under Seal:
    Name:       _____
    Address·    _____
    Telephone:  _____
    Facsimile:  _____
    E-mail:     _____

Date of Filing: 05/11/00

Party has filed a separate Motion to Seal, requesting that the matter remain sealed:
    ___  Until Conclusion of Trial    ___  Until Conclusion of Direct Appeal
    ___  Until Case Closing      X  Until the arrest of the first defendant
    ___  Until further order of the Court    ___  Permanently
    ___  Other _____

If permanent sealing is required, specify the authorizing law, court order or court rule:
_____

The moving party requests that when the sealing period expires, the filed matter should be (select one):
    X   unsealed and placed in the public portion of the court file
    ___  destroyed
    ___  returned to the party or counsel for the party, as identified above

_____
COURT RULING
(to be completed by Clerk based on Court's order)

Ruling on Motion to Seal:  ___ Granted  ___ Denied  ___ Other
Date: _____

Matter May Be Unsealed After·
    ___  Conclusion of Trial    ___  Conclusion of Direct Appeal
    ___  Until the arrest of the first defendant ___  Until further order of the Court
    ___  Case Closing    ___  Other _____