UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NIGHT BOX
FILED

CASE NO. 00-6117-CR-HUCK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEO BROVILLETTE,

    Defendant.

_____/

### DEFENDANT BROVILLETTE'S OBJECTIONS TO THE PRE SENTENCE INVESTIGATION REPORT

The Defendant, Leo Brovillette, through counsel, files his Objections to the Pre Sentence Investigation Report, and states;

**Objection No. 1, Pages 5, 6, 7, 8 and 9**

Defendant Brovillette objects to the factually unsubstantiated representation that he was involved in "more than minimal planning" as stated in Paragraph 33, Page 11 of the Report. In support of the Defendant's position he relies upon the United States Probation Offices Offense Conduct as accurately portrayed on pages 5,6, 7 ,8, and 9.

Additional support for not including a "More than Minimal Planning" enhancement pursuant to Federal Sentencing Guideline 2F1.1 (b)(2), where the representations made by the Assistant United States Attorney prior to entry of the guilty plea. The Government expressly stated that Defendant Brovillette would not be given this enhancement.



The United States Probation Office has gone to tremendous detail outlining the illegal transactions perpetrated upon numerous banks and financial institutions in the South Florida Area. The four page dissertation explains how Mr. Roseman and Mr. Kudron purchased numerous properties in low income sections of Fort Lauderdale, Florida. In tremendous detail the scheme is presented as to how the two main defendants purchased the homes and subsequently sold the homes to individuals who simply did not qualify.

Loan applications were completed by Mr. Roseman and Mr. Kudron submitted to banks and mortgage companies on behalf of the applicant. Banks were swindled, false documents were regularly prepared. Mr. Roseman and Kudron knew exactly what was required by lending organizations for individuals to qualify for a loan. Credit histories were created by Mr. Roseman and Mr. Kudron.

When the absence of employment history was an issue, Mr. Roseman and Mr. Kudron prepared fraudulent documents. In the alternative Roseman and Kudron would convince employers to lie on behalf of the applicant. Kudron and Roseman would also use businesses that they knew would lie for them. Fraudulent pay stubs and paychecks were also prepared to satisfy inquisitive bank employees.

The illicit scam continued to evolve as Kudron and Roseman needed a more elaborate method for deceiving the lending institutions. As set forth in Paragraph 16, the two main conspirators wrote checks from their own account to the perspective buyers. The Pre Sentence Investigation Report states that two purposes were served by this transaction. First, "since the banks required buyers to provide three months bank statements, this method showed that transactions had

occurred on the account Also this method showed the bank that the money came from the buyer's account."

The pinnacle of their conspiratorial endeavors probably took place when Mr. Kudron and Roseman "began creating fraudulent bank statements on word processors and altering cashier's checks in order to fool the banks." Paragraph 16, Page 6.

"Roseman and Kudron "forged letters from FP&L and Southern Bell and other creditors (insurance companies, appliance stores, etc.) claiming that the buyers had good credit." Page 7, Paragraph 17.

Defendant Brovillette attempts to make the point that he was not involved to the extent of the other co-defendants simply by examining the Government's version of the "Offense Conduct." Defendant Brovillette was a handy man who worked on numerous apartments at the direction of Mr. Kudron and Mr. Roseman. He was not in a position of any authority, decision making, or supervision. Mr. Brovillette repaired homes at their direction and made them habitable for occupancy.

His actions of being a handy man did not induce the banks to make fraudulent loans. He did not prepare documentation for submission to the banks.

**Objection No 2, Page 9, Paragraph 25**

Defendant Brovillette did not work for Kudron and Roseman throughout the conspiracy. He completed repairs on properties purchased by Kudron and Roseman. The inference that Mr. Brovillette is a culpable as Mr. Roseman and Kudron is not supported by the Government or by the facts.

3

**Objection No. 3, Page 10, Paragraph 28**

Defendant Brovillette requests that the two point enhancement for more than minimal planning and a scheme to defraud does not apply to his involvement in this case. The Defendant requests that the Base Offense Level (Paragraph 33) be reduced to level ten.

**Objection No. 4, Page 12, Paragraph 44**

Defendant Brovillette requests the production of certified copies of the disposition of this case. The Defendant objects to the inclusion of one criminal history point absent the certified copies.

**Objection No. 5, Page 15, Paragraph 55**

Defendant Brovillette objects to the statement that "his adolescent rebelliousness led him to be housed in various juvenile detention centers." In my twenty years of practicing in the criminal courts the Defendant's childhood experiences are unsurpassed by any previous client. After the deaths of his family members, the Defendant was placed in numerous foster homes. In some of these homes he was beaten and abused. When released from the foster homes and returned to his mother and step father, he was severely beaten by his step father.

The Defendant Brovillette was housed in juvenile detention centers inappropriately. As a young child the Defendant had the intuition to contact the courts by himself. Upon realizing that he was being held in such a facility without justification, he was ordered released by the Court.

There was a time during his adolescence that the Defendant was returned to his mother. Unfortunately this did not work out as his mother refused to take him in. The Defendant's youth was tragic and extremely unfortunate. He objects to the casualness of the statement "adolescent rebelliousness." He lived a true nightmare, a nightmare that cannot be condensed into one paragraph.

4

Undersigned counsel discussed these objections with Mr. Kaplan prior to filing. Undersigned counsel left a message on Probation Officer's voice mail identifying the objections. She was unavailable for comment.

WHEREFORE, the Defendant, Leo Brovillette, through counsel, requests that his Objections to the Presentence Investigation Report be granted. He requests that the Base Offense Level be reduced to Level Ten. He requests that his criminal history be reduced to Category 1. He requests that the Base Offense Level be further reduced another two levels for "Acceptance of Responsibility" thereby reducing his offense level to eight. According to The Federal Sentencing Guidelines, Category 1, Base Offense Level Eight establishes a sentencing range from 0 to 6 months.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Robert N. Berube
Supervisory Assistant
Federal Public Defender
Florida Bar No. 304247
Attorney for Defendant
101 N.E. 3rd Avenue, Suite 202
Fort Lauderdale, Florida 33301
(954) 356-7436 / (Fax) 356-7556

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the aforementioned motion was mailed on this _7_ day of December, 2000, to Jeffrey Kaplan, Assistant United States Attorney, at 299 East Broward Boulevard, Fort Lauderdale, Florida 33301 and United States Probation Officer Katherine Gomez, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301.

Robert N. Berube